**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CASE NO.

PRIMEPAY, LLC d/b/a "CoAd", )
a Delaware Limited Liability Company, )
)
Plaintiff, )
)
v. )
)
PROFITKEEPERPRO.COM LLC, )
a Florida Limited Liability Company, )
)
Defendant )

# COMPLAINT

Plaintiff PrimePay, LLC d/b/a "CoAd" ("Plaintiff"), for its Complaint against Defendant ProfitKeeperPro.com LLC ("Defendant" or "PK Pro"), alleges and avers as follows:

## NATURE OF THE ACTION

1. This is an action for, *inter alia*, trademark infringement and unfair competition. Plaintiff seeks, among other things, a permanent injunction: (i) enjoining Defendant and those acting in concert with it from wrongful and unlawful use of federally registered trademarks; and (ii) damages related to Defendant's unlawful use of Plaintiff's trademarks.

## THE PARTIES

2. Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 101 Riverfront Boulevard, Suite 300, Bradenton, FL 34205.

3. Upon information and belief, Defendant is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 5957 Amberwood Drive, Naples, Florida 34110.

## JURISDICTION AND VENUE

4. Through this Complaint, Plaintiff asserts claims against Defendant that arise, *inter alia*, under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*., and the statutes and common laws of the State of Florida.

5. The Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), 15 U.S.C. § 1121 and 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over Defendant in that Defendant has sold, and is selling, its products and services to customers throughout the State of Florida, and elsewhere within the United States.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims herein occurred in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(3), as Defendant does business in the Middle District of Florida, and is subject to personal jurisdiction in this judicial district.

## BACKGROUND FACTS

8. Since 2006, Plaintiff has advertised and sold financial software and services under the trademark PROFITKEEPER.

9. Plaintiff's software automates the collection of financial data that is typically collected manually by an accountant or bookkeeper, and aggregates that data across various businesses. The software provide benchmarking, analytics, and insights.

10. One exemplary use of Plaintiff's software is the automatic collection of financial data for franchisees, to provide benchmarking, analytics, and insights for the benefit of both the franchisor and the franchisees.

11. Beginning in January 2019, Plaintiff began using the trademark PROFITKEEPER BY PRIMEPAY (And Design), as shown below, in connection with the same financial software and services.

12. Plaintiff owns the following United States Trademark Registrations for the marks PROFITKEEPER and PROFITKEEPER BY PRIMEPAY (And Design) (collectively, the "Marks"):

| **Mark** | **Reg. No./ App. No.** | **Reg. Date** | **Owner** | **Goods/Services** |
|---|---|---|---|---|
| PROFITKEEPER | 6,551,795 | Nov. 9, 2021 | PrimePay, LLC | "Accounting services" (Class 35)<br><br>"Software as a Service (SAAS) services featuring software for accounting" (Class 42) |
| PROFITKEEPER BY PRIMEPAY (And Design) | 6,682,647 | Mar. 29, 2022 | PrimePay, LLC | "Accounting services" (Class 35)<br><br>"Software as a Service (SAAS) services featuring software for accounting" (Class 42) |
| | | | | |

The PROFITKEEPER Marks

13. Plaintiff holds common law trademark rights in the Marks, as used in connection with the sale of accounting services, and software for accounting.

14. U.S. Trademark Registration 6,551,795 for the mark PROFITKEEPER (the "'795 Registration") was issued November 9, 2021 to Plaintiff, and relates to services such as "[a]ccounting services" and "[SAAS] services featuring software for

accounting." A copy of the Registration Certificate for the '795 Registration is attached hereto as **Exhibit A**.

15. The '795 Registration is valid and subsisting.

16. U.S. Trademark Registration 6,682,647 for the mark PROFITKEEPER BY PRIMEPAY (And Design) (the "'647 Registration") was issued March 29, 2022 to Plaintiff, and relates to services such as "[a]ccounting services" and "[SAAS] services featuring software for accounting." A copy of the Registration Certificate for the '647 Registration is attached hereto as **Exhibit B**.

17. The '647 Registration is valid and subsisting.

18. The PROFITKEEPER® mark has been used in interstate commerce by Plaintiff for more than twenty (20) years and has never been subject to challenge by any party.

19. The PROFITKEEPER® mark is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, entitling Plaintiff to a conclusive presumption of ownership and an exclusive right to use the mark.

20. Plaintiff has expended substantial sums since 2006 in advertising and promoting the PROFITKEEPER® mark in connection with accounting and financial software and services, including but not limited to, significant expenditures devoted to research, advertising, and marketing.

21. As a result of the promotion, advertising and sales of Plaintiff's services under the PROFITKEEPER® mark for over 20 years (since 2006), and the

maintenance of the highest quality standards relating thereto, consumers have come to associate the PROFITKEEPER® mark exclusively with Plaintiff.

22. The PROFITKEEPER BY PRIMEPAY (And Design)® mark has been used in interstate commerce by Plaintiff for more than five (5) years and has never been subject to challenge by any party.

23. The PROFITKEEPER BY PRIMEPAY (And Design)® mark is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, entitling Plaintiff to a conclusive presumption of ownership and an exclusive right to use the mark.

24. Plaintiff has expended substantial sums since 2019 in advertising and promoting the PROFITKEEPER BY PRIMEPAY (And Design)® mark in connection with accounting and financial software and services, including but not limited to, significant expenditures devoted to research, advertising, and marketing.

25. As a result of the promotion, advertising and sales of Plaintiff's services under the PROFITKEEPER BY PRIMEPAY (And Design)® mark for over 5 years (since 2019), and the maintenance of the highest quality standards relating thereto, consumers have come to associate the PROFITKEEPER BY PRIMEPAY (And Design)® mark exclusively with Plaintiff.

26. The Marks are inherently distinctive.

27. The Marks have acquired distinctiveness through Plaintiff's use in connection with its services for well over five (5) years continuously and exclusively.

28. Plaintiffs sell millions of dollars' worth of software under the Marks each year in the United States.

29. The Marks are well and favorably known and represent the source and origin of Plaintiff's services sold in association therewith.

30. Plaintiff sells high quality services under the Marks throughout the United States.

31. The strength of the Marks is one of Plaintiff's most valuable corporate assets.

<u>Defendant ProfitKeeper Pro</u>

32. Defendant, according to its website (https://www.profitkeeperpro.com/), sells software and services for "review[ing] [automotive] repair orders, parts invoices and [comparing] customer charges. The software also identifies "compromises, such as customer overcharges and undercharges." *See* **<u>Exhibit C</u>**; https://www.profitkeeperpro.com/how-it-works.

33. Defendant currently sells this software, and its associated services, primarily to automobile dealerships.

34. Defendant's website and logo utilize a prominent lime green color scheme, exactly the same as Plaintiff, adding to the likelihood of confusion.



*Plaintiff's Website*




*Defendant's Website*

35. Defendant's software essentially tracks Repair Orders ("ROs") done at car dealerships so that the dealership can track performance of Service Advisors, Technicians, and others involved in the service process.

36. When a new dealership is onboarded by Defendant, the dealership provides Defendant all their parts and labor costs.

37. The parts and labor information then gets uploaded to the software database so that performance can be tracked.

38. Defendant's software displays key financial metrics like Work In Progress ("WIP"), Accounts Receivable ("AR"), Gross Sales, Net Profit, and other traditional financial metrics.

39. In essence, Defendant's software is intended to enhance car dealership performance through labor and parts tracking; it tells the dealership where their losses are occurring so that they can improve performance and profits.

40. In much the same way, Plaintiff's PROFITKEEPER software tracks the financial performance of franchisees for the benefit of the associated franchisors.

41. Plaintiff's clients include franchise operators likes Little Ceasar's, Papa John's and Sport Clips.

42. As stated on Plaintiff's website, the PROFITKEEPER software "[t]urn[s] financial and operational data into actionable insights that help you rank & benchmark franchisee performance, share & implement best practice improvements, and continuously monitor & optimize performance." *See* https://www.profitkeeper.com/.

43. Just as Defendant's software is intended to maximize profits for car dealerships, Plaintiff's PROFITKEEPER software is intended to maximize profits for franchises.

44. Defendant is not an authorized dealer or distributor of Plaintiff.

45. Defendant's website also indicates that the company was started no earlier than November 2021, which is well after Plaintiff began use of the Marks. *See* **Exhibit C**; https://www.profitkeeperpro.com/about-our-team.

46. Defendant offers and sells accounting and financial software services under the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" (the "Infringing Services").

47. The Infringing Services are the same as the services offered by Plaintiff under the Marks – they both seek to improve the financial efficiency and performance of the business whose data is uploaded into the software.

48. Upon information and belief, Defendant began using the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" at some point in 2021 or after.

49. Plaintiff recently received an inquiry from a third party in the financial services industry who expressed confusion and concern over the alleged business relationship between Plaintiff and Defendant as a result of Defendant's use of the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" in connection with the Infringing Services.

50. That third party also raised concerns about Defendant's use of the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" in connection with the Infringing Services extensively on social media, including but not limited to, on LinkedIn.

## DEFENDANT'S INFRINGEMENT

51. Upon information and belief, Defendant is presently selling its software services nationwide under the marks "ProfitKeeperPro" and "ProfitKeeperPro.com".

52. The '795 Registration for the mark PROFITKEEPER covers such as "[a]ccounting services" and "[SAAS] services featuring software for accounting."

53. The '647 Registration for the mark PROFITKEEPER BY PRIMEPAY (And Design) covers such as "[a]ccounting services" and "[SAAS] services featuring software for accounting."

54. Plaintiff holds common law trademark rights in the Marks as used in connection with the sale of financial accounting software and services.

55. Defendant's use of the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" in connection with the sale and offering for sale of financial accounting software and services will cause consumers to believe that such goods are endorsed, sponsored by or associated with Plaintiff, and has already caused confusion by at least one known third party.

56. Defendant's infringing acts violate Plaintiff's rights in the '795 Registration.

57. Defendant's infringing acts violate Plaintiff's rights in the '647 Registration.

58. Defendant's infringing acts violate Plaintiff's common law trademark rights in the Marks.

59. Upon information and belief, Defendant had knowledge that the Marks were subject to intellectual property protection prior to launching its business.

60. Upon information and belief, Defendant had knowledge that the Marks were subject to intellectual property protection prior to launching its website at https://www.profitkeeperpro.com/.

## COUNT I
## (Trademark Infringement Under Section 32 Of The Lanham Act)

61. Plaintiffs hereby restate and incorporate the allegations of foregoing Paragraphs 1-58.

62. Plaintiff owns all right, title and interest in and to the ‘795 Registration for the mark PROFITKEEPER®.

63. Defendant is improperly and willfully infringing the ‘795 Registration in interstate commerce through the advertising, promotion, sale and distribution of the Infringing Services.

64. Defendant’s use in interstate commerce of the marks “ProfitKeeperPro” and “ProfitKeeperPro.com” in connection with the advertising and sale of the Infringing Services is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114). Particularly, customers are likely to purchase Defendant’s Infringing Services believing them to be those of Plaintiff, thereby resulting in a loss of goodwill and sales to Plaintiff.

65. Defendant’s conduct constitutes trademark infringement, and/or induces or contributes to acts of trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

66. As a direct and proximate result of Defendant’s conduct, Plaintiff has been, and continue to be, substantially injured in their business including harm to their goodwill and reputation, and the loss of revenues and profits.

67. Plaintiff has no adequate remedy at law, and unless enjoined by this Court, Defendant will continue to engage in such acts of trademark infringement, to the irreparable damage and injury of Plaintiff.

68. Upon information and belief, Defendant has engaged in the above-referenced acts of trademark infringement with full knowledge of Plaintiff's exclusive rights in '795 Registration, and Defendant continues in such acts of intentional infringement, thus making this case exceptional and entitling Plaintiff to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action.

69. Plaintiff owns all right, title and interest in and to the '647 Registration for the mark PROFITKEEPER BY PRIMEPAY (And Design)®.

70. Defendant is improperly and willfully infringing the '647 Registration in interstate commerce through the advertising, promotion, sale and distribution of the Infringing Services.

71. Defendant's use in interstate commerce of the marks "ProfitKeeperPro" and "ProfitKeeperPro.com" in connection with the advertising and sale of the Infringing Services is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114). Particularly, customers are likely to purchase Defendant's Infringing Services believing them to be those of Plaintiff, thereby resulting in a loss of goodwill and sales to Plaintiff.

72. Defendant's conduct constitutes trademark infringement, and/or induces or contributes to acts of trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73. As a direct and proximate result of Defendant's conduct, Plaintiff has been, and continue to be, substantially injured in their business including harm to their goodwill and reputation, and the loss of revenues and profits.

74. Plaintiff has no adequate remedy at law, and unless enjoined by this Court, Defendant will continue to engage in such acts of trademark infringement, to the irreparable damage and injury of Plaintiff.

75. Upon information and belief, Defendant has engaged in the above-referenced acts of trademark infringement with full knowledge of Plaintiff's exclusive rights in '647 Registration, and Defendant continues in such acts of intentional infringement, thus making this case exceptional and entitling Plaintiff to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action.

**COUNT II**
**(Unfair Competition By False Designation Of Origin Under Section 43(a) Of The Lanham Act)**

76. Plaintiff hereby restates and incorporates the allegations of foregoing Paragraphs 1-58. (We can't incorporate all prior paragraphs, or we risk dismissal based on the "shotgun pleading" doctrine.)

77. The Marks operate as indicators of source and/or origin, and have acquired distinctiveness via secondary meaning.

78. The Marks are distinctive in the minds of the relevant purchasers of Plaintiff's services as being associated exclusively with Plaintiff.

79. Defendant, through its use of the Marks, has without authorization, in connection with its goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of Defendant's goods and/or services, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

80. Consumers are likely to purchase the Infringing Services believing that Defendant is affiliated, connected or associated with Plaintiff, resulting in a loss of goodwill to Plaintiff.

81. Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

82. Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

83. As a direct and proximate result of Defendant's conduct, Plaintiff has been, and is likely to be, substantially injured in its business including harm to their goodwill and reputation and the loss of revenues and profits.

84. Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendant's misconduct.

85. Unless enjoined by this Court, Defendant and those acting in concert with it will continue to infringe Plaintiff's intellectual property rights in the Marks, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the Marks and/or marks confusingly similar thereto, and to ameliorate and mitigate Plaintiff's injuries.

86. Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of Plaintiffs' exclusive rights in the Marks, and Defendant will continue in such acts unless enjoined by this Court.

**COUNT III**
**(Florida Common Law Unfair Competition)**

87. Plaintiff hereby restates and incorporates the allegations of foregoing Paragraphs 1-58.

88. Plaintiff owns and enjoys common law trademark rights in the Marks in the State of Florida, and throughout the United States.

89. The Marks operate as indicators of source and/or origin, particularly when used in interstate commerce. Moreover, the Marks have acquired distinctiveness via secondary meaning.

90. Defendant, through its use, display and copying of the Marks has, without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of Defendant's goods and services in violation of the common law of the State of Florida.

91. Consumers are likely to purchase the Infringing Services believing that Defendant is affiliated, connected or associated with Plaintiff, resulting in a loss of goodwill to Plaintiff.

92. Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

93. Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

94. As a direct and proximate result of Defendant's conduct, Plaintiff has been, and is likely to be, substantially injured in their business including harm to their goodwill and reputation and the loss of revenues and profits.

95. Upon information and belief, Defendant's acts of unfair competition are, and have been, oppressive, fraudulent and malicious, thus entitling Plaintiff to punitive damages.

96. Plaintiff has no adequate remedy at law because the Marks are unique and represent to the public Plaintiffs' identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for Defendant's misconduct.

97. Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe Plaintiffs' intellectual property rights in the Marks, to Plaintiff's irreparable injury. This threat of future injury to Plaintiff's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the Marks, and/or marks confusingly similar thereto, and to ameliorate and mitigate Plaintiff's injuries.

98. Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of Plaintiff's exclusive intellectual property rights in the Marks, and Defendant will continue in such acts unless enjoined by this Court.

**COUNT IV**
**(Florida Deceptive An Unfair Trade Practices, F.S. § 501.201 *et. seq*.)**

99. Plaintiff hereby restates and incorporates the allegations of foregoing Paragraphs 1-58.

100. Defendant's conduct constitutes unfair competition, unconscionable acts or practices, or unfair or deceptive acts or practices pursuant to Florida Statutes § 501.201, *et. seq*.

101. Specifically, Defendant infringed Plaintiff's Marks in violation of the Lanham Act and Florida state and common law, thereby causing likelihood of

confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services, and causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by another.

102. Defendant's acts irreparably harm Plaintiff, and will continue to do so unless Defendant is restrained by this Court.

103. Upon information and belief, Defendant has willfully intended to trade on the recognition, and harm, the reputation of Plaintiff's rights in the Marks.

104. As a result of Defendant's unfair competition and deceptive trade practices, Plaintiff has suffered and continue to suffer actual injury to the economic value of the services bearing the Marks.

105. Plaintiff has no adequate remedy at law.

106. As a result, Plaintiff is entitled to damages, an injunction prohibiting Defendant's further use of the Marks, and reasonable attorneys' fees and costs.

## COUNT V
## (Unjust Enrichment)

107. Plaintiff hereby restates and incorporates the allegations of foregoing Paragraphs 1-58.

108. Plaintiff invested substantial time, labor and money in the design, development, production and sale of the services sold under the Marks.

109. Defendant has wrongfully misappropriated the Marks, and has profited from and received certain other benefits as a result of such wrongful misappropriation.

110. Defendant has been unjustly enriched at Plaintiff's expense.

111. It would be inequitable to allow Defendant to retain the profits and other benefits it acquired through its wrongful actions.

112. Accordingly, Plaintiff is entitled to restitution in the amount of Defendant's unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, PrimePay, LLC, requests the following relief against Defendant:

A. Entry of a judgment that:

1. Defendant has infringed Plaintiff's federal trademark rights in the '795 and '647 Registrations;

2. Defendant's sale of the Infringing Services constitutes unfair competition under Section 43(a) of the Lanham Act;

3. Defendant has infringed Plaintiff's common law trademark rights in the Marks;

4. Defendant's sale of the Infringing Services constitutes common law unfair competition;

5. Defendant's sale of the Infringing Services violates Florida Statutes § 501.201 *et. seq.*;

6. Defendant has been unjustly enriched by the sale of the Infringing Services.

B. An Order preliminarily and permanently enjoining Defendant, its agents, servants and employees, and those people in active concert or participation with it from:

1. Using Plaintiff's Marks or any trademark, service mark, logo or trade name that is confusingly similar to the Plaintiff's Marks;

2. Otherwise infringing Plaintiff's Marks or using any similar designation, alone or in combination with any other components;

3. Passing off any of their products or services as those of Plaintiff and/or its authorized franchisees and licensees;

4. Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of its businesses, products or services as being Plaintiff and/or its authorized franchisees and licensees;

5. Causing a likelihood of confusion or misunderstanding as to its affiliation, connection or association with Plaintiff and/or its authorized franchisees and licensees or any of Plaintiff's products or services; and

6. Unfairly competing with Plaintiff and/or its franchisees and licensees in any manner.

C. An Order, pursuant to 15 U.S.C. § 1118, that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of Defendant, his affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation bearing Plaintiff's Marks, and all plates, molds, and other means of making the same, if any, be delivered to Plaintiff at Defendant's cost.

D. An Order requiring Defendant to promptly eliminate their advertising under Plaintiff's Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs,

telephone books, telephone directory assistance listings and mass mailings, all at Defendant's cost.

E. An Order, pursuant to 15 U.S.C. § 1116(a), requiring Defendant to file with the Court and to serve upon Plaintiff's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which Defendant has complied with such injunction or order.

F. An Order requiring Defendant to account and pay over to Plaintiff all gains, profits and advantages derived by it as a result of Defendant's infringement of Plaintiff's Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law.

G. An award to Plaintiff of such damages as it has sustained by reason of Defendant's trademark infringement and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for Plaintiff for three (3) times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

H. An award to Plaintiff of immediate and *ex parte* injunctive relief, and seizure of any and all goods of Defendant bearing counterfeit marks, pursuant to Section 34(d) of the Lanham Act, 15 U.S.C. § 1116(d).

I. An award to Plaintiff in an amount adequate to compensate Plaintiff for Defendant's acts of unfair competition, including but not limited to punitive damages.

J. Entry of judgment awarding Plaintiff such damages as they have sustained by reason of Defendant's unfair competition and deceptive trade practices pursuant to Florida Statutes § 501.201 *et. seq.*, and awarding Plaintiffs damages in amount to be determined at trial;

K. An award to Plaintiff of the amount of Defendant's unjust enrichment.

L. An award to Plaintiff of its costs and expenses, including reasonable attorney's fees.

M. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests and demands trial by jury on all claims so triable.

Dated: November 11, 2026

SAUL EWING LLP

By: *_/s/ Steven M. Appelbaum_*

STEVEN M. APPELBAUM, ESQ.
Florida Bar No. 71399
200 East Las Olas Blvd., Suite 1000
Fort Lauderdale, FL 33301
Telephone: (305) 428-4519
Email: Steven.Appelbaum@saul.com
Susan.lewis@saul.com
Litigationdocketing@saul.com

DARIUS C. GAMBINO, ESQ.
PA Bar. No. 83496
*Motion for Admission Pro Hac Vice to be Filed*
1735 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
Tel: (215) 972-7173
darius.gambino@saul.com

*Attorneys for Plaintiff*
*PrimePay, LLC*